UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ADWARD A. ALSHIMARI,
    *Plaintiff*,
v.                                        CASE NO. 14-cv-10778

COMMISSIONER OF                    DISTRICT JUDGE GERSHWIN A. DRAIN
SOCIAL SECURITY,                     MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

**I.    RECOMMENDATION**

This Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (docket 18) be DENIED, that Defendant's Motion for Summary Judgment (doc. 21) be GRANTED, and the decision of the Commissioner be affirmed.

**II.    REPORT**

    **A.    Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for supplemental security income benefits (SSI). The matter is currently before this Court on cross-motions for summary judgment.[2] (Docs. 18, 21.)

---

[1] The format and style of this Report and Recommendation comply with the requirements of Fed. R. Civ. P. 5.2(c)(2)(B). This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

[2] The Court has reviewed the pleadings and dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

Plaintiff filed an application for SSI on June 1, 2011, alleging that he became unable to work on June 1, 2011. (Transcript, Doc. 12 at 40-41, 83.) Plaintiff's claims were denied at the initial administrative stages. (Tr. 83.) On April 1, 2013, Plaintiff appeared at a hearing before Administrative Law Judge ("ALJ") David F. Neumann, who considered the application for benefits *de novo*. (Tr. 27, 32-34.) In a decision dated May 24, 2013, the ALJ found that Plaintiff was not under a disability within the meaning of the Social Security Act at any time from June 1, 2011, the date of application, through the date of the ALJ's decision. (Tr. 27.) Plaintiff requested Appeals Council review of this decision. (Tr. 10.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on October 25, 2013, when the Appeals Council denied Plaintiff's request for review. (Tr. 5-9.) On February 19, 2014, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.    Standard of Review**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is "more than a scintilla . . . but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)(quoting *Cutlip v. Sec'y Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not

2

the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports another conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)(citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)(en banc)(citations omitted)).

"Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006)("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party")(citations omitted); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

**C.     Governing Law**

Disability for purposes of SSI is defined as being:

> [U]nable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a)(SSI). Plaintiff's Social Security disability determination is to be made through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*See* 20 C.F.R. § 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007).

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)(cited with

4

approval in *Cruse v. Comm'r of Soc. Sec.,* 502 F.3d 532, 540 (6th Cir. 2007)); *see also Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994)("[c]laimant bears the burden of proving his entitlement to benefits."). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. § 416.920(a)(4)(v), (g)).

   **D.   ALJ Findings**

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since June 1, 2011, the application date. (Tr. 18.) At step two, the ALJ found that Plaintiff's early medial compartment arthrosis of the right knee, coronary artery disease status post stent to left anterior descending artery, diabetes mellitus type II, obesity, small herniated disk of the cervical spine, small disk extrusion of the lumbar spine and major depressive disorder are "severe" impairments within the meaning of the second sequential step. (Tr. 18.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. 18-20.) The ALJ found that the Plaintiff had the residual functional capacity (RFC) to perform a range of light work as defined in the Regulations[3] with the following additional limitations:

---

[3] Light work is defined as
   [L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 416.967(b).

5

[T]he claimant could lift or carry 10 pounds frequently and 20 pounds occasionally; could stand and/or walk (with normal breaks) for a total of 2 hours in an 8-hour workday and could sit (with normal breaks) for a total of 6 hours in an 8-hour workday; should avoid frequent ascending and descending of stairs; could perform pushing and pulling motions with his upper and lower extremities within the aforementioned weight restrictions; could occasionally climb ramps and steps, balance, stoop, kneel, crouch, and crawl; would require simple, routine, and repetitive work at an SVP of 1 or 2; occasional contact with supervisors, co-workers, and the public; and would have no need to use, read, or write English. (Tr. 20.)

At step four, the ALJ found that Plaintiff has no past relevant work. (Tr. 26.) At step five the ALJ found that Plaintiff was not disabled because he retains the ability to perform jobs that exist in significant numbers in the national economy. (Tr. 26.)

### E.     Administrative Record

Plaintiff used an interpreter at the hearing. Plaintiff was 49 years old at the time of the hearing. (Tr. 38.) He completed the twelfth grade in Iraq. (Tr. 39.) Plaintiff lives with his wife, two of his daughters and his son. (Tr. 50.) Plaintiff has a driver's license. (Tr. 40.) He testified that he does not drive, his son takes him out once a week, yet he also testified that he drove three days prior to the hearing to get bread. (Tr. 51.)

Plaintiff testified that his back pain started in 1992, he has pain in both legs, with the right worse than that left, he has "strong" neck pain when he gets out of bed, and he has right knee pain. (Tr. 42-44.) Plaintiff testified that he wears compression socks that were prescribed by his doctor. (Tr. 39.) He explained that he takes medication for pain, but it is "not doing anything" for him. (Tr. 45.) He testified that he can make a grocery list in Arabic but not in English. (Tr. 40.) He testified that he does not know how to use a microwave oven. (Tr. 50.)  He can take out a small bag of trash, but he does not do other house or yard work. (Tr. 50-52.) He testified that he watches Arabic news on television. (Tr. 52.)

6

Plaintiff underwent stenting of a subtotally occluded LAD in September 2009. (Tr. 450.) An April 2012 echocardiogram was normal and stress testing was normal, including no arrythmias and negative for myocardial ischemia. (Tr. 445, 450.) A January 5, 2010 MRI of the lumbar spine reveals a "small broad-based disc extrusion in the left foraminal/paracentral region" at L5/S1 "resulting in moderate narrowing of the left neural foramen with possible encroachment on the left L5 nerve root. (Tr. 441.) A January 12, 2010 MRI of the cervical spine revealed a "[s]mall, focal, midline herniated disc at C5-6" and "a cavity within the central portion of the cord at the level of C6 and 7" that "may simply represent a dilated central canal. (Tr. 440.) A March 2012 MRI of the right knee revealed a medial collateral ligament sprain and a "[h]igh-grade partial versus full-thickness tear of the medial patellofemoral ligament." (Tr. 485.)

Plaintiff treated with Pravin Soni, M.D., at ACCESS for his mental health issues. (Tr. 487-90.) ACCESS notes state that Plaintiff had been seen there for individual therapy and medical review since April 25, 2012, had been seen for therapy four times since March 2012, and had seen the psychiatrist twice since March 2012. (Tr. 493.) Dr. Soni completed a Mental Residual Functional Capacity Questionnaire dated March 1, 2013, on which he indicated that he treated Plaintiff every three months for thirty minutes. (Tr. 487, 490.) On the portion of the questionnaire regarding "mental abilities and aptitudes needed to do unskilled work," the doctor identified all aptitudes as being within the "limited but satisfactory" or "seriously limited, but not precluded" categories and identified no aptitudes as falling within the "unable to meet competitive standards" or "no useful ability to function" categories. (Tr. 489.) He opined that Plaintiff's impairments or treatment would cause him to be absent from work more than four days per month. (Tr. 490.)

The ALJ questioned the vocational expert (VE) at the hearing. The ALJ asked the VE to consider an individual of the Plaintiff's age, education and work experience with the following limitations:

> [W]ho would require work which is simple, routine, repetitive work at an SVP: 1 or 2 who could lift or carry 10 pounds frequently and 20 pounds occasionally. Who could stand or walk with normal breaks for a total of six hours in an eight-hour workday, who could sit with normal breaks for a total of six hours in an eight-hour workday, stand and walk six, sit six, avoid frequent ascending and descending stairs, who could perform pushing and pulling motions with their upper extremities within those weight restrictions, who could perform each of the following postural activities occasionally. Climbing ramps and stairs, balancing, stooping, kneeling, crouching and crawling and no need to use, read or write English. (Tr. 57.)

The VE testified that there are light exertion, unskilled jobs that fit this category, including cleaners, who clean vacated office buildings or hotel and motel rooms, with 8,500 jobs in the state, half as many in the southeast Michigan area and a Dictionary of Occupational Titles (DOT) code 323.687-014; hand packagers with 25,000 jobs in the state and half as many in southeast Michigan, and a representative DOT code 559.687-074; hand assemblers with 25,000 jobs in the state and half as many in southeast Michigan and representative DOT code 706.684-022; and inspectors and sorters with 15,000 in Michigan, half as many in southeast Michigan and representative DOT code 222.687-042. (Tr. 58.)

The ALJ then asked the VE to consider the same individual as the first hypothetical with the additional limitations to "occasional contact with supervisors, coworkers and the public and the person could stand or walk with normal breaks for a total of two hours in an eight-hour workday and sit with normal breaks for a total of six hours in an eight-hour workday." (Tr. 58.) The VE clarified that such an individual would need to sit at benches or tables in the performance of light occupations, yet is able to perform the weight requirements for light work. (Tr. 59.) The VE testified that such an individual could perform jobs such as hand packager, reduced to 12,000

8

jobs in Michigan, hand assemblers reduced to 10,000 jobs in Michigan, inspectors and sorters reduced to 8,000 jobs in Michigan, and half as many jobs in each category in the southeast Michigan area, with the same representative DOT codes as given in response to the prior hypothetical question. (Tr. 59.) The VE based the performance of seated jobs at the light exertional level, which is a variance from the DOT, on her professional work experience. (Tr. 60.)

The ALJ then asked the VE to consider an individual who would miss work four times per month on a consistent basis. (Tr. 59.) The VE testified that such a limitation would be preclusive of full-time competitive work. (Tr. 59.) Finally, the ALJ asked the VE to consider the second hypothetical question, with the addition that the individual would be off task for 20 percent of the workday. (Tr. 60.) The VE called this the "cusp of acceptability," explained breaks and general tolerances for being off task during the day, and concluded that the prior numbers of jobs would still be available. (Tr. 60.) Plaintiff's representative follow-up with questions to the ALJ regarding the VE testimony and stated her position that neither hypothetical one nor two was supported by the medical record. (Tr. 61.)

**F.    Analysis**

Plaintiff claims that the ALJ's credibility determination was erroneous and that the RFC was not supported by substantial evidence. As an initial matter, the ALJ correctly determined whether Plaintiff was disabled between his June 1, 2011 application date and the date of the ALJ's May 24, 2013 decision, yet considered evidence prior to that time period to the extent it was relevant. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) ("The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after [his] application date.").

9

Plaintiff argues that the ALJ summarized Plaintiff's medical evidence but "made no specific findings regarding inconsistencies that be (sic) believed to exist" and that it "is not enough for the ALJ to generally state that he did not feel the objective findings were severe enough to cause pain." (Doc. 18 at 16.) The ALJ is required by the Regulations to explain his credibility determination with respect to Plaintiff's symptoms. *See* 20 C.F.R. § 416.929; *see also* SSR 96-4p and 96-7p. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters,* 127 F.3d at 531. Credibility assessments are not insulated from judicial review. Despite deference due, such a determination must nevertheless be supported by substantial evidence and contain specific reasons for the weight the adjudicator assigned to the individual's statements. *See id.*; SSR 96-7p.

To the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 416.929(c)(2). In addition to objective medical evidence, the ALJ must consider all the evidence of record in making his credibility determination. *See* 20 C.F.R. § 416.929(c)(2), (3); *see also Felisky*, 35 F.3d at 1039-41. Relevant factors to be considered include the following: daily activities, location, duration, frequency and intensity of pain and other symptoms, precipitating and aggravating factors, medicine including the type, dosage, effectiveness and side effects, treatment for relief of pain or other symptoms, any measures used to relieve pain, and "[o]ther factors concerning your functional limitations and restrictions due to pain or other symptoms." 20 C.F.R. § 416.929(c)(3)(I)-(vii).

10

An ALJ is not precluded from focusing on the objective medical evidence in considering limitations and restrictions related to symptoms. As set forth above, the analysis of symptoms and resultant limitations starts with the "existence of a medically determinable physical or mental impairment," which "cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings." SSR 96-4p. The ALJ properly considered the objective medical evidence of record in his findings, including in the context of Plaintiff's credibility. For example, the ALJ pointed out moderate findings by MRI, Plaintiff's cardiac improvement post-stenting, and a recent cardiac work-up that was essentially normal or negative. (Tr. 22-24, 440-41, 445, 450, 482, 485.)

Contrary to Plaintiff's argument, the ALJ cited specific evidence to support his credibility determination. The ALJ considered Plaintiff's activities of daily living. With respect to activities of daily living, Plaintiff testified that he is able to dress, bathe and take care of his personal needs. (Tr. 21, 25, 48.) He testified that he does not shop. (Tr. 21, 48-49.) Then he clarified that he will go to a small store if he is feeling okay. (Tr. 49.) He testified that if he goes to the store, he pays for his items with a Bridge card and does not pay in cash unless his son gives him cash. (Tr. 49.) He reportedly watches television and reads. (Tr. 21, 220.)

The ALJ pointed out that activities of daily living to which Plaintiff testified were more restricted than those he reported in a Function Report dated June 21, 2011.[4] (Tr. 25, 216-223.) In the Function Report it was reported that he can prepare frozen dinners for 5 to 10 minutes at a time and he is able to pay bills, count change, handle a savings account and use a checkbook or money

---

[4]As the ALJ noted in his decision, at the hearing Plaintiff's representative asked the ALJ to give limited weight to the function report that Plaintiff's daughter assisted him in completing. The representative did not believe that Plaintiff would know how to use a checkbook because he would have to write in English. (Tr. 54.) The ALJ properly explained the consideration he gave to this function report despite Plaintiff's counsel's argument to the contrary. (Tr. 25.)

11

orders. (Tr. 218, 219.) At the hearing, Plaintiff was asked what kinds of things he cooks and he responded that the food might come out burnt and that he does not know how to use a microwave oven. (Tr. 50.)

The ALJ also pointed out that despite Plaintiff's testimony regarding his walking, sitting and standing ability, approximately 10 minutes each, and reportedly lifting only 3 pounds, evidence of record indicated his performance of greater activities, including Plaintiff's chest pain with walking "fast" and shoveling snow. (Tr. 25, 46, 221, 312.) The ALJ pointed out that the note regarding walking fast and shoveling snow was made in 2009 treatment notes, but found it relevant because Plaintiff alleges his back condition started in the 1990s. (Tr. 25.) At that time, the doctor had suspected exertional angina. (Tr. 313.) While this report predates the relevant period and arguably raises questions as to its relevance, this was just one of many factors the ALJ considered.

The ALJ noted that despite Plaintiff's testimony that he can sit for only ten minutes, he sat throughout the hearing which lasted for over one hour. (Tr. 25.) The ALJ did not err in mentioning his observations, where he relied on a variety of other evidence in the record to discount Plaintiff's pain and limitations. *See Weaver v. Sec'y of Health and Hum. Servs.*, 722 F.2d 310, 312 (6th Cir. 1983)("While we recognize that observation and credibility are factors in this complicated equation, and as such are material, relevant, and admissible, we cannot allow the dismissal of a claim for pain solely on the ALJ's observations at the hearing. This procedure amounts to the infamous and thoroughly discredited "sit and squirm" test. We do not imply that there was no evidence in the record from which the ALJ could not draw the inference of a lack of pain. However, the ALJ must cite some other evidence for denying a claim for pain in addition to personal observation.") The ALJ's observation that Plaintiff was able to sit through the hearing is entirely consistent with the June 21, 2011 Function Report on which no problems were reported

12

with sitting, despite problems being listed with several other activities. (Tr. 221.) Plaintiff also testified at the hearing that he is able to lift ten pounds. (Tr. 47.)

As the ALJ noted, Plaintiff provided testimony at the hearing through an interpreter and answered that he does not understand any English at all, yet other records note that he can speak some, though perhaps minimal, English. (Tr. 35.) One of his treatment notes indicates that "[t]his treatment plan has been explained to me in Arabic." (Tr. 499.) It was also reported that Plaintiff "speaks some English, however, seen in presence of interpreter and reported ongoing problems with depression, anxiety, getting isolative . . . ." (Tr. 503.)

The ALJ properly considered Plaintiff's treatment for pain and response to treatment, noting that treatment was generally conservative. (Tr. 22, 23, 24.) For example in March 2012, orthopedic surgeon Hassan Hammoud, M.D., recommended Plaintiff "perform home exercises, massages, and to continue stretching exercises on a daily basis" and "continue present medication." (Tr. 437.) He was also referred to physical therapy three times a week for six to eight weeks. (Tr. 437.) The ALJ noted an inconsistency where Plaintiff testified that his pain medications do not help, yet there is evidence in the record that he reported pain relief with medication, for example at the March 30, 2012 appointment with Dr. Hammoud, the doctor noted Plaintiff's report that pain increases with activity and he has relief with medications. (Tr. 25, 431-33.) Plaintiff reported that lower back pain increases with walking, standing and heavy lifting. (Tr. 431.) At a February 2013 appointment, it was also noted that Plaintiff had pain relief with medication.[5] (Tr. 439.) As the ALJ noted, Plaintiff attended physical therapy from January to

---

[5] In his brief, Plaintiff cites this February 6 record at transcript p. 439, yet refers to it as a 2012 record and alleges the following: "On February 6, 2012, Plaintiff presented with left knee pain at a 7/10 that radiated into his left leg and was described as constant and was exacerbated with medication." (Doc. 18 at 14.) There is no evidence in the left knee records at transcript p. 439 that Plaintiff's pain was "exacerbated" with medication. In fact, the record states, "Pain increases with activities. Pain reliefs (sic) with meds." (Tr. 439.)

13

March 2010 for his neck pain and low back pain. (Tr. 386-409.) A January 27, 2010 status report showed that Plaintiff was benefitting from treatment and a March 26, 2010 discharge report showed that Plaintiff's prognosis was "good" and he had met 69% of his physical therapy goals before it was reported that he had plateaued and that his insurance company would not authorize more visits. (Tr. 388, 389.)

In March 2012, Plaintiff was evaluated by an orthopaedic surgeon for his right knee. (Tr. 412.) Richard Valenzuela, M.D., reviewed Plaintiff's MRI and diagnosed "right knee pain secondary to early medial compartment arthrosis" and recommended treatment with Motrin 800 and physical therapy. (*Id.*) Plaintiff's mental health treatment provider reported that Plaintiff underwent individual therapy and medical review every three months for thirty minute sessions and his symptoms were improving, yet some depression symptoms remained. (Tr. 487.) The ALJ's conclusion that Plaintiff's treatment was conservative was supported by substantial evidence and the records show response to treatment. The ALJ properly considered and explained multiple factors in weighing Plaintiff's credibility and his determination was supported by substantial evidence in the record.

Next, Plaintiff argues that the ALJ's RFC was not "accurate" and therefore the ALJ's finding at step five that Plaintiff can perform a significant number of jobs in the economy is not supported by substantial evidence. (Doc. 18 at 16.) Plaintiff argues that his "medical evidence supports a finding that he is unable to perform even 'sedentary' work." (Doc. 18 at 18.) Plaintiff then included the same multi-paragraph statement of facts that appears in two other portions of the brief. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125

14

F.3d 989, 995-96 (6th Cir. 1997) (citations omitted); *see also Crocker v. Comm'r of Soc. Sec.*, 2010 WL 882831 at *6 (W.D.Mich. 2010)("This court need not make the lawyer's case by scouring the party's various submissions to piece together appropriate arguments.")(citations omitted). Plaintiff has failed to develop any arguments specific to the ALJ's RFC findings, yet for the sake of completeness I will address these steps herein.

Pursuant to SSR 96-8p, the ALJ included evidence within his decision which supports the RFC conclusions, discussed Plaintiff's symptoms, explained where Plaintiff's reported limitations could not be found consistent with the other evidence of record and explained his conclusions.[6] The ALJ referenced both the documents of record and the hearing testimony, revealing that all of Plaintiff's limitations which the ALJ found credible were considered in formulating the RFC and the hypothetical question to the VE.

It is worth noting that the ALJ discussed the medical opinions of record, including Dr. Hammoud's note in March 2012, advising Plaintiff to "avoid any strenuous vocational or nonvocational activities, which may exacerbate the painful condition." (Tr. 437.) The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other

---

[6] The ALJ properly acknowledged a prior ALJ's RFC dated September 29, 2009, for a restricted range of light work. Consistent with Acquiescence Ruling 98-4(6), the current ALJ noted that there has been a change in Plaintiff's condition that warrants a slight change in the RFC. AR 98-4(6) provides that

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding. AR 98-4(6).

This Ruling applies only in cases involving claimants "who reside in Kentucky, Michigan, Ohio, or Tennessee at the time of the determination or decision on the subsequent claim at the initial, reconsideration, ALJ hearing or Appeals Council level." AR 98-4(6).

substantial evidence in [the] case record." *Wilson*, 378 F.3d at 544; 20 C.F.R. § 416.927(c)(2). "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. § 416.927(c)(3). "Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." SSR 96-2p; *see also Rogers*, 486 F.3d at 242.

The ALJ specifically noted that while Dr. Hammoud's limitation was vague, it was not inconsistent with the severe restrictions set forth in the RFC, including a limitation to work no more strenuous than a limited range of light exertion work. (Tr. 23.) The ALJ also gave detailed reasons for discounting the "medical needs" and "medical examination reports" completed by Dr. Abu-Farha, including the lack of explanation within the opinion forms and the lack of objective medical evidence to support the severity set forth therein in contrast to relatively routine treatment notes. (Tr. 24.)

With respect to the exertional limitations, Plaintiff is limited to lifting and carrying within the exertional limitations of light work, consistent with the prior RFC. The ALJ pointed out that the medical evidence of record does not support a further reduction in the exertional lifting and carrying restrictions to less than light work yet evidence supports changes with regarding to sitting, standing and social interactions. (Tr. 21, 22.) Plaintiff has a severe right knee impairment that was

16

not included as a severe impairment in the prior ALJ decision. The ALJ reduced the walking and standing requirements in the RFC. The ALJ limited Plaintiff to standing and/or walking a total of two hours in an eight-hour workday, and limited stair and ramp climbing to only occasionally. (Tr. 20.) At the hearing, Plaintiff testified that he has pain with bending at the waist and he cannot squat or kneel because his knees begin to shake. (Tr. 47.) The RFC limited Plaintiff to no more than occasional stooping, kneeling, crouching, crawling or balancing. (Tr. 20.)

With respect to non-exertional limitations, by the time of the ALJ hearing, Plaintiff had presented with and obtained treatment for mental health conditions that were not reported at the time of application. (Tr. 86-87, 216, 221, 222.) The ALJ included non-exertional limitations in the RFC to account for Plaintiff's limitations in maintaining concentration, persistence or pace and social functioning. The ALJ limited Plaintiff to simple, routine and repetitive work, and not more than occasional contact with supervisors, co-workers, and the public. (Tr. 20.) This is not inconsistent with M. Pravin Soni, M.D., who concluded that Plaintiff was limited but still functioned satisfactorily in interacting with the general public, maintaining socially appropriate behavior, and getting along with and working in proximity to co-workers without being unduly distracted and without distracting them or exhibiting behavioral extremes, and was seriously limited but not precluded, in accepting criticism from a supervisor. (Tr. 489-90.) The RFC limitation to simple, routine and repetitive work at an SVP 1 or 2 is also consistent with Dr. Soni's opinion that Plaintiff would be "[s]eriously limited, but not precluded" in areas involving "detailed" instructions, semi-skilled and skilled work, accepting instructions from the supervisor, dealing with changes and work stress, remembering and carrying out instructions, maintaining a schedule and workweek, and performing at a consistent pace. (Tr. 489-90.) As set forth by the doctor, none of these activities would not be precluded, yet the ALJ's RFC reduces Plaintiff's

17

exposure to areas in which Plaintiff is limited. As the ALJ pointed out, he gave Dr. Soni's opinion very little weight where he opined that Plaintiff would miss over four days per month. There was no basis for this listed within the opinion, and it was neither consistent with nor supported by the other records. (Tr. 24, 490.) While the record remains unclear as to whether Plaintiff has no ability to communicate in English, or some minimal ability in speaking, reading and/or writing, the RFC limits Plaintiff to work which does not require using, reading or writing English language. (Tr. 20.)

In a hypothetical question posed to the VE, an ALJ is required to incorporate only those limitations which he finds credible and supported by the record and the ALJ did so. *See Casey v. Sec'y of Health and Human Servs.,* 987 F.2d 1230, 1235 (6th Cir. 1993). The ALJ's RFC was supported by substantial evidence in the record. The ALJ properly relied on the VE's testimony in response to the hypothetical question to find that Plaintiff can perform a significant number of jobs in the economy. The ALJ's finding at step five is supported by substantial evidence in the record.

### G.     Conclusion

The ALJ's decision to deny benefits was within the range of discretion allowed by law, it is supported by substantial evidence and there is simply insufficient evidence to find otherwise. Defendant's Motion for Summary Judgment (doc. 21) should be granted, that of Plaintiff (doc. 18) denied and the decision of the Commissioner affirmed.

### III.    <u>REVIEW</u>

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y*

*of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r of Soc. Sec.,* 474 F.3d 830, 837 (6th Cir. 2006) (*citing Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987)). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. E.D. Mich. LR 72.1(d)(3). The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                                        s/ Charles E. Binder
                                                      CHARLES E. BINDER
Dated: November 21, 2014                     United States Magistrate Judge